IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ADVANCE TRUST & LIFE ESCROW SERVICES, LTA**, as securities intermediary for **LIFE PARTNERS POSITION HOLDER TRUST**, on behalf of itself and others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**PROTECTIVE LIFE INSURANCE COMPANY,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 2:18-CV-1290-KOB<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

This matter comes before the court on "Defendant's Motion for Judgment on the Pleadings," in which Defendant Protective Life Insurance Company moves to dismiss Plaintiff Advance Trust & Life Escrow Services' entire complaint—which involves life insurance policies issued in 1986, 1998, 1999, and 2005—as time barred, either by Alabama's applicable statute of limitations or its common-law rule of repose. (Docs. 25 & 26). This Memorandum Opinion also addresses "Plaintiff's Motion for Leave to File an Amended Complaint Pursuant to Fed. R. Civ. P. 15," in which Plaintiff Advance Trust seeks to "clarify and reinforce what [Defendant] apparently disputes." (Doc. 32).

Upon receiving Defendant Protective Life's motion for judgment on the pleadings, the court ordered Advance Trust to show cause why the court should not dismiss its complaint as untimely, (doc. 29); Advance Trust responded on November 19, 2018, (doc. 31), and simultaneously filed a motion for leave to amend its complaint, (doc. 32). With leave of the

1

court, Defendant Protective Life filed briefs opposing Advance Trust's response to the motion for judgment on the pleadings and Advance Trust's motion to file an amended complaint. (Docs. 42 & 44). And Advance Trust filed a reply in support of its motion to amend. (Doc. 45).

With the two motions fully briefed, the court considers the issues ripe for review. For the reasons stated below, the court will DENY Defendant's motion for judgment on the pleadings and will GRANT Plaintiff's motion for leave to amend its complaint, if Plaintiff still wishes to amend in view of this Memorandum Opinion.

**I. Factual Background**

Defendant Protective Life Insurance Company offers standardized "universal life" policies with "flexible premiums," which serve as both life insurance and investment vehicles. Through a chain of assignments, Advance Trust ultimately came to own Protective Life flexible premium policies issued in the years 1986, 1998, 1999, and 2005.

For the purposes of Advance Trust's complaint, these policies contain identical operative language as to how Protective Life should calculate premiums. The policies require the insured to pay minimum premiums designed to cover "cost of insurance" charges and certain other specified expenses. COI charges represent the insurer's mortality risk, also known as the "mortality charge" or the "pure cost of protection." (Doc. 1 at ¶ 2). As flexible premium policies, the policies allow the insured to pay in excess of the required minimum premiums, with the surplus payment added to the investment portion of the product, or to the "policy value." Protective Life deducts the COI charges directly from the insured's policy value every month, so each COI deduction constitutes a transfer of funds from the insured to the insurer.

The amount of the COI deduction "is determined at the end of each policy month." (Doc. 1-1 at 15). Determining the monthly cost of insurance involves determining the "COI rate,"

which "is based on the sex, attained age, and rate class of the Insured and on the policy year." (Doc. 1-1 at 16). The policies include COI Rate Tables that forecast increased COI rates as the insured ages. (Doc. 1-1 at 24). But the policies also provide that "[m]onthly cost of insurance rates *will be determined* by [Protective Life], based on [its] expectations as to future mortality experience"[1] and that "*[a]ny change* in the monthly cost of insurance rates will be on a uniform basis for insureds of the same class." (Doc. 1-1 at 16) (emphasis added).

While monthly COI rates invariably increase as the insured ages and the pure cost of protection commensurately rises, Advance Trust alleges the policies obligate Protective Life to adjust the Rate Table, which determines *how much* the COI rate should increase, as expectations of future mortality experience change. Advance Trust claims Protective Life has failed to "periodically review the COI rates to confirm that they correctly capture the insurer's projected mortality costs" and to reduce the COI Rate Tables when expectations as to future mortality experience decline. (Doc. 1 at ¶ 3).

Protective Life appears to have based the COI Rate Tables in the policies at issue on the "1980 CSO Mortality Table," an industry-standard mortality table insurers commonly used at the time of policy issuance to calculate appropriate COI rates. The American Academy of Actuaries has released at least two updated mortality tables since 1980—one in 2001 and one in 2015—each one showing improved life expectancy rates compared to the preceding table. (Doc. 1 at ¶ 6). But since issuing these policies, Protective Life has never altered the Rate Tables, meaning the premiums increase according to the same schedule as initially set out at issuance.

Advance Trust filed this lawsuit individually and on behalf of other policyholders on August 13, 2018, alleging one count of breach of contract. The complaint alleges that Protective

---

[1] The court notes that "expectations as to future mortality experience" overlap considerably, if not entirely, with the concept of life expectancy. That is, expectations as to future mortality experience change in response to improved or worsened average life expectancies. This Memorandum Opinion uses the terms interchangeably.

Life breached the contract "by deducting COI charges calculated from COI rates not based on its expectations as to future mortality experience." (Doc. 1 at ¶ 37). Advance Trust specifically identifies the alleged overcharges as stemming from Protective Life failing to reduce COI rates based on improved mortality, in breach of its contractual duty. (*Id.*). Advance Trust also alleges that Protective Life breached the policies by using factors other than expectations as to future mortality to calculate COI rates. (Doc. 1 at ¶ 38).

Protective Life filed an answer and then filed the motion for judgment on the pleadings now before this court. (Docs. 16 and 25). Advance Trust filed a response, as well as a motion to amend its complaint. (Doc. 31–32). The parties have fully briefed the motions, and the issue is now ripe for this court's review.

## II. Standards of Review

Defendant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and Plaintiff filed a motion for leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a). The court articulates the proper standard for each in turn.

*A. Motion for Judgment on the Pleadings Standard*

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). A judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). To determine whether the movant is entitled to a judgment on the pleadings, the court should "accept as true all material facts alleged in the *non-moving party's pleading*, and . . . view those facts in the light

most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (emphasis added).

The court analyzes a Rule 12(c) motion for judgment on the pleadings the same way as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Dial v. City of Bessemer*, No. 2:14-cv-01297-RDP, 2016 WL 3054728, at *3 (N.D. Ala. May 31, 2016) ("A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss."). So, "to survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

  *B. Motion for Leave to Amend Complaint Standard*

"[A] plaintiff's motion to amend is 'committed to the sound discretion of the district court,' but that discretion 'is strictly circumscribed' by Rule15(a)(2) of the Federal Rules of Civil Procedure, which instructs that leave to amend should be 'freely give[n] when justice so requires.'" *City of Miami v. Wells Fargo & Co.*, 801 F.3d 1258, 1267 (11th Cir. 2015), *cert. granted sub nom. Wells Fargo & Co. v. City of Miami, Fla.*, 136 S. Ct. 2545 (2016) (*quoting Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988)). "Despite the rule that leave to amend should be given freely, the court may deny leave to amend on numerous grounds, including the futility of the amendment." *Patel v. Georgia Dep't BHDD*, 485 F. App'x 982, 982 (11th Cir. 2012) (*citing Maynard v. Bd. of Regents of Div. of Univs. of Florida Dept. of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003)). "Futility justifies the denial of leave to

amend where the complaint, as amended, would still be subject to dismissal." *Patel*, 485 F. App'x at 982 (*citing Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

**III. Discussion**

Two separate issues now come before the court: (1) the timeliness of Advance Trust's complaint under both Alabama's statute of limitations and rule of repose; and (2) the appropriateness of granting Advance Trust leave to amend its complaint. The court addresses each in turn.

*A. Timeliness of Advance Trust's Complaint*

Despite the parties' lengthy briefs, Defendant Protective Life's motion for judgment raises the rather discrete legal question of how to apply Alabama's statute of limitations and rule of repose to insurance policies issued in 1986, 1998, 1999, and 2005. Protective Life argues that because Advance Trust alleges Protective Life breached the four contracts at issue as soon as it charged the first premiums, the statute of limitations for these breach-of-contract claims has already expired. (Doc. 26).

But Advance Trust argues that Protective Life ignored its ongoing duty to ensure that its monthly rates abided by the terms of the contracts and thus breached the contract each and every month. (Doc. 31). As explained below, the court agrees that the policies plausibly establish an ongoing duty to at least *periodically* update the policies' Rate Tables to reflect changes in life expectations. And without opining as to the frequency of this duty, the court concludes that Advance Trust's complaint allows for the reasonable inference that Protective Life incurred and ignored that duty most recently within the six years prior to Advance Trust filing this action.

6

1. Alabama Statute of Limitations and § 6-5-280

Alabama law provides that the limitations period for breach of contract claims is six years, and the limitations period begins when the contract is breached. *AC, Inc. v. Baker*, 622 So. 2d 331, 333 (Ala. 1993) (citing Ala. Code § 6-2-34(9) (1975)). Even if the plaintiff does not suffer an actual injury, the limitations period begins to run when a party breaches the contract. *Am. Gen. Life & Accident Ins. v. Underwood*, 886 So. 2d 807, 813 n. 1 (Ala. 2004) (citing *Stephens v. Creel*, 429 So. 2d 278 (Ala. 1983)).

But the parties disagree on when, or if, ongoing violations of a contract give rise to multiple causes of action, each with its own six-year limitations period. Section 6-5-280 of the Alabama Civil Code, entitled "Breach of Contract—Limitation on Actions," provides:

> If a contract is entire, only one action can be commenced for breach thereof; but if it is severable or if the breaches occur at successive periods in an entire contract, as where money is to be paid by installments, an action will lie for each breach; provided, that all the breaches occurring up to the commencement of the action must be included therein.

Ala. Civ. Code § 6-5-280 (1975).

Plaintiff asserts that the policies at issue constitute severable agreements, or, alternatively, that the alleged breaches occurred at successive periods, giving rise to a distinct cause of action for each breach. In other words, Plaintiff's theory posits that a new breach occurred each time that the Defendant collected a premium that didn't reflect a properly calibrated COI. (Doc. 31 at 17–30). Defendant argues that § 6-5-280 does not address the statute of limitations for a breach-of-contract action; instead, § 6-5-280 merely forbids the splitting of a cause of action into several separate lawsuits. (Doc. 44 at 19–20).

To support its position, Defendant notes that § 6-5-280 appears in a different Chapter and Article of the Alabama Code than the statute of limitations—specifically, the Chapter governing

civil actions and the Article governing contracts. Ala. Civ. Code § 6-5-280 (1975). Defendant also states that no Alabama appellate court has ever applied § 6-5-280 to the statute of limitations for a breach of a contract. Defendant interprets the statutory language as supporting its position, arguing that "an action for each breach" refers to a single action that includes "all the breaches occurring up to the commencement of *the action*." (Doc. 44 at 19) (emphasis in original) (citing § 6-5-280).

The court disagrees. The plain language of § 6-5-280 recognizes that a distinct cause of action may arise for *each breach*. By then referring to "*the* action," the statute intends not to consolidate all the breaches into a single cause of action but instead intends to consolidate all the causes of action into a single suit. *See McNeil v. Ritter Dental Mfg. Co.*, 213 Ala. 24, 26 (1925) ("No doubt the uncertainty of the application of the rule against splitting *causes of action* induced the insertion in the Code of [§ 6-5-280].") (emphasis added).

Defendant would have this court end its analysis here, with the conclusion that § 6-5-280 addresses claim-splitting and has no bearing on the applicable limitations period to bring a breach-of-contract claim. But just because § 6-5-280 resides in the contracts section of the Alabama Code, rather than the section explicitly governing statutes of limitation in civil proceedings, and primarily addresses claim-splitting does not necessarily mean that it has no implications for how to apply Alabama's statute of limitations to lawsuits involving successive breaches of contracts. In fact, though in an unreported case, the Eleventh Circuit explicitly held that § 6-5-280 means that "a distinct limitations period attaches to each breach of an ongoing contract." *Ripps v. Powers*, 356 F. App'x 352, 355 (11th Cir. 2009) (citing § 6-5-280 and *Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc.*, 873 So. 2d 1091, 1104 (Ala. 2003)

(applying § 6-5-280 and recognizing successive breaches in the context a lessee failing to pay periodic rent as required by the lease)).

Other courts have reached similar conclusions, even if only implicitly. *See Echols v. Conros Corp.*, No. CV 2:08–0219–SLB, 2010 WL 11561201, at *7 n. 17 (N.D. Ala. July 27, 2010) (implicitly concluding that whether the contract at issue was "entire" or "severable" would affect when the limitations period for the action began to run); *Gregory v. Chem. Waste Mgmt., Inc.*, 38 F. Supp. 2d 598, 621 (W.D. Tenn. 1996) (applying Alabama law) ("Therefore, Plaintiffs may recover for each breach of [] the contract that accrued within six years prior to commencement of this action.").

So, the court interprets § 6-5-280 as recognizing successive breaches of contract, as well as breaches of severable agreements, as distinct causes of action, each with its own limitations period, claims for which should be filed in one lawsuit.

2. Severability of Policies and Successive Breaches

The court must now determine whether the policies at issue constitute "severable" agreements, or alternatively if the alleged breaches occurred at successive periods.

The Alabama Supreme Court has noted that leases calling for periodic rent fall under the category described in § 6-5-280, such that "[e]ach failure to pay an installment when due creates a separate cause of action." *Bowdoin Square*, 873 So. 2d at 1104. But the facts in this case are the reverse—Plaintiff alleges Defendant breached the contracts monthly by charging too much, not paying too little.

In *Am. Gen. Life & Accident Ins. v. Underwood*, a case also involving allegations of overcharging for life insurance premiums, the Alabama Supreme Court deemed the action untimely because "the rule of repose began running on each claim arising from the purchase of a

9

particular policy as soon as the plaintiff paid the first premium for the policy." 886 So. 2d at 813. But the Court also noted that "[t]he premium rate for each policy was set when the policy was issued." *Id.* at 809. The court cites *Underwood*, a case analyzing the rule of repose in the context of allegedly discriminatory insurance premiums, as persuasive authority tending to show how the Alabama Supreme Court would analyze the admittedly different question now before this court. That is, the court cites *Underwood* as support for the proposition that when an insurer sets unduly high premiums, *but those premiums are not subject to any subsequent changes*, a single limitations period begins to run at the time the cause of action accrues, regardless of whether that cause of action sounds in tort or contract.

But, the policies in this case provide that the "cost of insurance is determined at the end of each policy month." (Doc. 1-1 at 15). Determining the monthly COI charge involves determining the COI rate, which "is based on the sex, attained age, and rate class of the Insured and on the policy year." (Doc. 1-1 at 16). The policies include Cost of Insurance Rate Tables with applicable rate classes, but the policy also provides that "[m]onthly cost of insurance rates **will be determined** by [Protective Life], based on [its] expectations as to future mortality experience." (Doc. 1-1 at 16, 24) (emphasis added). Plaintiff alleges that the policies intend the included COI Rate Table to establish appropriate COI rates at issuance, but that Protective Life then has an ongoing duty "to periodically review the COI rates to confirm that they correctly capture the insurer's projected mortality costs." (Doc. 1 at ¶ 3). Indeed, Plaintiff appears to allege that by providing that "*monthly* cost of insurance rates *will be determined*," the policies obligate Protective Life to ensure its COI rates reflect current expectations as to future mortality experience every single month.

Protective Life disputes that the policies establish such an ongoing duty and the court makes no determination on the merits of that position; instead, at the motion to dismiss stage the court simply notes that the language "will be determined" at least plausibly obligates Protective Life to periodically update its COI rates.[2] Specifically, the court notes that the policies' use of the phrase "*will* be determined," as opposed to "*may* be determined," plausibly indicates an ongoing duty to ensure the COI rates reflect current data.

Since issuance, Protective Life has never adjusted the Rate Tables on Plaintiff's policies. (Doc. 44 at 14 ¶ 5). So Protective Life argues that any breach could have only occurred when it initially set them—i.e., the same year of issuance. (*Id.*). But this position ignores its alleged duty to periodically review and adjust the COI Rate Table as expectations of future mortality experience fluctuate. Under Plaintiff's theory that Protective Life has had such a duty since issuance, each change in Protective Life's expectations of future mortality experience triggered its obligation to review its rates; each improvement in life expectancy should have decreased the rates in the COI Rate Table; and each time Defendant did not decrease rates in view of improved life expectancy it breached the contract anew, and a new six-year limitations period began to run.

But the court does not adopt wholesale Plaintiff's position that Protective Life successively breached the contracts each time it charged an allegedly inflated monthly premium. In *Underwood*, the Court noted that a "suit on a breach-of-contract claim . . . may be commenced as soon as the defendant breaches the contract, regardless of whether the plaintiff suffered an actual injury." 886 So. 2d at 812–13 n. 1 (citing *Creel*, 429 So. 2d at 278). When, or how often, a plaintiff suffers damages from a breach of contract has no impact on the limitations period for the breach that caused the injury. *Creel*, 429 So. 2d at 280 ("As a general rule, the statute of

---

[2] The court declines at this point to opine if this obligation contemplates regularly scheduled updates, occasional updates in response to new data, or something else entirely.

11

limitations begins to run in civil actions on *contracts* from the time the right of action accrues. This is usually the time of the breach of the agreement rather than the time that actual damages are sustained as a consequence of the breach.") (quoting 51 Am. Jur. 2d *Limitation of Actions* § 126 (1970)).

So, Protective Life's failure to adjust its Rate Tables could constitute a breach of its alleged ongoing duty to ensure those tables reflect current data. But subsequent applications of those inflated rates to determine the monthly cost of insurance would not necessarily constitute successive breaches; they would instead only determine when Plaintiff sustained its injuries. *Cf. Underwood*, 886 So. 2d at 813 ("[T]he continued collection of premiums after the payment of the first premium for each policy did not toll the running of the rule of repose.").[3]

### 3. Plausible Breaches within Limitations Period

At the motion to dismiss stage, the court does not require Plaintiff's complaint to clearly specify the precise moments Protective Life became obligated to adjust its COI Rate Tables. To be timely, the complaint need only alleged facts that, if true, plausibly establish that the policies required Protective Life to decrease the Rate Tables at least once within the six years prior to Plaintiff's filing this lawsuit.

The complaint alleges Protective Life based the COI Rate Table in the policies at issue on the "1980 CSO Mortality Table." (Doc. 1 at 22). But when the updated 2001 CSO Mortality Table showed improved life expectancy rates, Protective Life did not adjust accordingly the COI Rate Tables in the subject policies. But if the release of the 2001 CSO Mortality Table represents

---

[3] Plaintiff also alleges that Protective Life's use of factors other than expectations as to future mortality, such as "expense and lapse" and an "embedded profit margin," also breaches the contract. (Doc. 1 at ¶¶ 8, 38). The same analysis applies. If Protective Life's alleged ongoing duty to review and adjust the COI Rate Tables includes ensuring the rates *only* factor in future mortality, then each failure to exclude other factors when obligated to recalculate the applicable COI rates would constitute a new breach. But, if Protective Life's alleged ongoing duty solely involves adjusting the applicable COI rates as future mortality fluctuates, then *only* the initial inclusion of forbidden factors would constitute a breach and subsequent surcharges related to that breach would determine when Plaintiff sustained its injuries.

an inciting event such that the policies required Protective Life to review and adjust the COI Rate Tables, Protective Life's refusal to do so breached the contract *in 2001*—more than six years before Plaintiff filed suit—so Plaintiff's complaint untimely alleges that breach.

But Plaintiff's complaint alleges additional, more recent events that plausibly could have triggered Protective Life's duty to periodically review and adjust the COI Rate Tables in the subject policies. For instance, the 2017 CSO Mortality Table purportedly showed improved life expectancy rates since the 2001 CSO Mortality Table. (Doc. 1 at ¶ 6). The Society of Actuaries also sponsored two reports published in 2013 and 2014 that similarly showed improved mortality rates since 2001. (Doc. 1 at ¶ 23). In the face of the allegedly ongoing duty to ensure the subject policies' Rate Tables reflected current mortality data, those events could have triggered Protective Life's contractual obligation to review and adjust as necessary the Rate Tables.

Moreover, Advance Trust plausibly alleges that the policies obligate Protective Life to review and adjust its COI Rate Tables *every month*, and the 2017 CSO Mortality Table and the two subsequent reports plausibly establish that life expectancy rates have improved in the six years prior to the filing of this lawsuit. So, in the face of improving life expectancy rates over the last six years and an alleged obligation to monthly review and update the policies' Rate Tables, the court can reasonably infer that Protective Life breached its duty to downwardly adjust the Rate Tables at some point within the statute of limitations.

Discovery may well establish that no such triggering event occurred since 2012 and that, at least within the statute of limitations, the contract did not require Protective Life to decrease its COI rates. But Plaintiff has at least earned the chance to engage in that discovery. So the court WILL DENY Protective Life's motion to dismiss Plaintiff's claims as time-barred by Alabama's statute of limitations.

4. Alabama's Rule of Repose

Protective Life alternatively argues that Alabama's rule of repose bars Plaintiff's claims arising under the two policies issued more than twenty years prior to Plaintiff filing this action. (Doc. 26 at 26–30).

Preliminarily, the parties disagree as to whether this court can properly apply Alabama's common-law rule of repose to the instant matter. But even if the court applies Alabama's rule of repose as Defendant urges, the court still cannot agree that the rule of repose bars Plaintiff's complaint as untimely.

A statute of repose represents an "absolute bar" to claims not asserted within a certain time; an action will not lie if brought outside of the statute of repose, regardless of the operation of the statute of limitations. *Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982). "The rule of repose begins running on a claim as soon as all of the essential elements of that claim coexist so that the plaintiff could validly file suit." *Underwood*, 886 So. 2d at 812; *see also Evans v. Walter Indus., Inc.*, 579 F. Supp. 2d 1349, 1365 (N.D. Ala. 2008) (Bowdre, J.) (citing *Underwood* and noting that "all of the essential elements of Plaintiffs' claim must exist before the doctrine of repose applies"). Alabama's rule of repose operates similarly to its statute of limitations but is broader in scope in at least two ways: (1) "the rule is based solely upon the passage of time" and "is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured"; and (2) "the rule is broader than a statute of limitation in that . . . repose is substantive and extinguishes both the remedy and the actual action," as opposed to just the remedy. *Ex parte Liberty Nat'l Ins.*, 825 So. 2d 758, 764–65 (Ala. 2002) (citations, internal quotations, and emphasis omitted).

Because § 6-5-280 of the Alabama Code recognizes distinct causes of action for separate breaches of the same contract, the twenty-year rule of repose runs separately on *each* cause of action, according to when the plaintiff could file that *particular* cause of action. *Cf. Boshell*, 418 So. 2d 92 ("[T]he 20-year common law rule is couched in terms of the 'running of the period against *claims*,' 'absolute bar to unasserted *claims*,' . . . etc.") (emphasis in original). Defendant has provided no authority, and this court could not find any, indicating that the rule of repose not only extinguishes claims for twenty-year-old breaches but also somehow extinguishes claims for successive breaches of the same contract. And the court notes that such a conclusion would run counter to the plain language of § 6-5-280. So, the court concludes that different rule of repose periods can attach to distinct claims under the same contract.

Here, Protective Life argues that Plaintiff (or its assignors) could have validly filed suit claiming breach of the 1986 and 1998 policies as soon as the insureds paid the first month's premium. But this court previously construed Plaintiff's complaint to allege that Protective Life breached its duty to *periodically* adjust the COI Rate Tables as required under the contract, not that it charged inflated premiums from inception and identically breached that contract each and every month. So Protective Life *could* have breached the contracts upon the first month's premiums being paid, and the rule of repose would extinguish those causes of action. But Plaintiff alleges that Protective Life successively breached the contracts by refusing to adjust the Rate Tables when required, and each incident of such refusal within the twenty years prior to filing this suit would constitute a new cause of action not subject to the twenty-year rule of repose. So the court WILL DENY Protective Life's motion to dismiss Plaintiff's claims as untimely under Alabama's rule of repose.

*B. Advance Trust's Motion for Leave to Amend Complaint*

In view of the court's decision on Defendant Protective Life's motion for judgment on the pleadings, Advance Trust may no longer wish to amend its complaint. But the court acknowledges that Advance Trust's initial complaint could more clearly delineate what duty it alleges Protective Life breached and when it alleges Protective Life breached that duty. So if Advance Trust still wishes to amend its complaint, it may do so by separately filing the proposed version attached to its motion to amend. (Doc. 32-1).

But the court also acknowledges that, in view of this Memorandum Opinion, Advance Trust may wish to file an amended complaint other than the one attached to its motion. So, for clarity's sake, the court WILL GIVE LEAVE to file an amended complaint that more closely follows the court's analysis in this Memorandum Opinion.

## IV. Conclusion

For the reasons stated above, the court WILL DENY Defendant Protective Life's motion for judgment on the pleadings. The court also WILL GRANT Plaintiff Advance Trust's motion for leave to amend its complaint or, alternatively WILL GIVE LEAVE for Advance Trust to file an amended complaint that clarifies its allegations in light of this Memorandum Opinion. If Advance Trust chooses to file an amended complaint, either the version already submitted to this court as an exhibit or another, Advance Trust shall file the amended complaint on or before October 2, 2019.

**DONE** and **ORDERED** this 20th day of September, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE