UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ADVANCE TRUST & LIFE ESCROW SERVICES, LTA,** as securities intermediary for **LIFE PARTNERS POSITION HOLDER TRUST,** and **WORTH JOHNSON,** on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>**PROTECTIVE LIFE INSURANCE COMPANY,**<br><br>  Defendant. | Case No.: 2:18-cv-01290-MHH |

## MEMORANDUM OPINION AND ORDER

In this breach of contract class action involving several universal life insurance policies, plaintiffs Advance Trust & Life Escrow Services and Worth Johnson, on behalf of themselves and others similarly situated, allege that defendant Protective Life Insurance Company forced them to pay unlawful and excessive cost of insurance – COI – charges each month. The plaintiffs contend that Protective Life should have reviewed and adjusted its COI Rate Tables to account for improved future mortality experience. Protective Life contends that the Eleventh Circuit's

1

decision in *Slam Dunk I, LLC v. Connecticut General Life Ins. Co.*, 853 Fed. Appx. 451 (11th Cir. 2021), mandates judgment in the company's favor on the plaintiffs' claims. (Doc. 111). This opinion resolves Protective Life's motion for judgment on the pleadings.

The opinion begins with a discussion of the standard that a district court uses to evaluate motions for judgment on the pleadings. Then, consistent with that standard, the Court describes the plaintiffs' factual allegations. Next, the Court briefly outlines this action's procedural history. Finally, the Court evaluates Protective Life's argument that *Slam Dunk* requires dismissal of the plaintiffs' claim.

## I.

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss." *Dial v. City of Bessemer*, No.: 2:14-cv-01297-RDP, 2016 WL 3054728, at *3 (N.D. Ala. May 31, 2016). Like a Rule 12(b)(6) motion to dismiss, a Rule 12(c) motion for judgment on the pleadings tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In deciding a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, a court must view the allegations in a complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  A court must accept well-pleaded facts as true.  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  A court may consider a written instrument attached to the complaint as an exhibit "if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

## II.[1]

Protective Life offers universal life insurance policies which "combine death benefits with a savings or investment component." (Doc. 92, p. 2, ¶ 3; Doc. 123, p. 3, ¶ 3). There are five universal life insurance policies at issue in this action.[2] Advance Trust owns four of the policies. (Doc. 92, pp. 10-11, ¶ 17; Doc. 123, pp. 11-12, ¶ 17).[3] Worth Johnson owns one of the policies. (Doc. 92, p. 11, ¶ 18; Doc. 123, p. 12, ¶ 18). It is unclear whose lives are insured under the policies.

Every three months, the policyholder must pay the planned premium. (Doc. 1-1, p. 5). For policy #B00087535, the minimum quarterly premium is $128.31. (Doc. 1-1, p. 5). Subject to certain limitations, the policyholder also may pay

---

[1] The factual allegations discussed in this opinion appear in the plaintiffs' second amended complaint, (Doc. 92), and the plaintiffs' proposed third amended complaint, (Doc. 123). The second amended complaint was the operative complaint when Protective Life filed the motion for judgment on the pleadings now before the Court. The proposed third amended complaint is a carbon copy of the second amended complaint with one additional allegation:

> Even if Protective [Life] Were Permitted to Consider Other Unenumerated Factors in Determining COI Rates, It is Still Dramatically Overcharging Policyholders and in Breach of Contract

(Doc. 123, p. 25) (emphasis in Doc. 123).

[2] The plaintiffs attached one the policies owned by Advance Trust, B00087535, to their initial complaint. (Doc. 1-1). In response to Protective Life's first motion for judgment on the pleadings, the plaintiffs attached the other three policies owned by Advance Trust. (Docs. 33-1; 33-2; 33-4). For purposes of this discussion, all of the policies are identical. (Doc. 92, p. 12, ¶ 23; Doc. 123, p. 13, ¶ 23; Doc. 46, p. 2). Throughout this memorandum opinion and order, the Court will refer to the policy language in Doc. 1-1.

[3] Advance Trust appears to have purchased its four policies on the secondary market.

premiums more frequently and in greater sums. (Doc. 1-1, pp. 11-12). The premiums, less the premium expense charge, go into the policyholder's account. (Doc. 1-1, p. 15).[4] Once in the account, the money accrues interest according to the guaranteed interest rate provided in the policy. For policy #B00087535, the guaranteed interest rate is 0.36748% per month, compounded monthly, which equals 4.5% per year, compounded annually. (Doc. 1-1, p. 6). This is how the investment component of Protective Life policies grows in value.

Protective Life also makes a monthly deduction from a policyholder's account. "The monthly deduction is the sum of the following four items:"

(1) The cost of insurance and the cost of additional benefits provided by riders for the policy month.

(2) The monthly expense charge applicable to the Initial Face Amount. This charge applies only the first 12 policy months. It is equal to the Monthly Expense Charge per $1,000 (shown in the Policy Schedule) multiplied by the number of thousands of Initial Face Amount.

(3) The monthly expense charge applicable to any increase in face amount. This charge applies only to the first 12 policy months following the day on which an increase becomes effective. It is equal to the Monthly Expense Charge per $1,000 of increase (shown in the Policy Schedule) multiplied by the number of thousands of increase. This charge does not apply to an increase caused solely by a change in death benefit option.

(4) The Monthly Administrative Charge shown in the Policy Schedule.

---

[4] This is also called the "Net Premium." (Doc. 1-1, p. 15). For policy #B00087535, the premium expense charge is 4.5%. (Doc. 1-1, p. 6).

(Doc. 1-1, p. 15). Given that the second charge applies only during the first 12 months after the policy is purchased, the third charge applies only if the policy's face value increases and only in the first 12 months after that increase, and the fourth charge is only $2.25, (Doc. 1-1, p. 6), the primary component of the monthly deduction is the cost of insurance. The COI represents "the insurer's cost of providing mortality coverage." (Doc. 92, p. 13, ¶ 25; Doc. 123, p. 14, ¶ 25).

"The cost of insurance is determined at the end of each policy month as follows:"

(1) divide the death benefit at the beginning of the policy month by the sum of 1 plus the guaranteed interest rate;

(2) reduce the result by the amount of policy value (prior to deducting the cost of insurance) at the beginning of the policy month;

(3) multiply the difference by the cost of insurance rate as described in the Cost of Insurance Rates section.

(Doc. 1-1, p. 15). The third component, the cost of insurance rate, functions as a multiplier. As the cost of insurance rate increases, the cost of insurance increases. In turn, as the cost of insurance increases, the monthly deduction increases. As the monthly deduction increases, the policy's investment component loses value.[5] The policies state that the cost of insurance rate is determined as follows:

---

[5] The subsection titled "Policy Value" provides:

> The policy value on the Date of Issue is the first net premium less the monthly deduction for the month following the Date of Issue. The policy value on a monthly anniversary day will be calculated as (1), plus (2), plus (3), minus (4) where:

> The monthly cost of Insurance rate is based on the sex, attained age, and rate class of the Insured and on the policy year. Attained age means age nearest birthday on the prior policy anniversary. Monthly cost of insurance rates will be determined by us, based on our expectations as to future mortality experience. Any change in the monthly cost of insurance rates will be on a uniform basis for insureds of the same class such as age, sex, rate class, and policy year. However, the cost of insurance rates will not be greater than those in the Table of Guaranteed Maximum Insurance rates, shown in the Policy Schedule.

(Doc. 1-1, p. 16). The Table of Guaranteed Maximum Insurance Rates provides:

| ATTAINED AGE | RATE | ATTAINED AGE | RATE | ATTAINED AGE | RATE | ATTAINED AGE | RATE | ATTAINED AGE | RATE |
|---|---|---|---|---|---|---|---|---|---|
| 0 | $ .097 | 20 | $ .158 | 40 | $ .251 | 60 | $1.341 | 80 | $8.305 |
| 1 | .089 | 21 | .159 | 41 | .274 | 61 | 1.463 | 81 | 9.037 |
| 2 | .082 | 22 | .157 | 42 | .296 | 62 | 1.601 | 82 | 9.867 |
| 3 | .081 | 23 | .155 | 43 | .322 | 63 | 1.758 | 83 | 10.803 |
| 4 | .079 | 24 | .151 | 44 | .349 | 64 | 1.932 | 84 | 11.825 |
| 5 | .075 | 25 | .147 | 45 | .379 | 65 | 2.122 | 85 | 12.910 |
| 6 | .071 | 26 | .144 | 46 | .410 | 66 | 2.326 | 86 | 14.035 |
| 7 | .066 | 27 | .142 | 47 | .443 | 67 | 2.543 | 87 | 15.189 |
| 8 | .063 | 28 | .141 | 48 | .478 | 68 | 2.773 | 88 | 16.369 |
| 9 | .061 | 29 | .142 | 49 | .517 | 69 | 3.023 | 89 | 17.577 |

---

> (1) is the policy value on the prior monthly anniversary day;
> (2) is one month's interest on item (1);
> (3) is all net premiums received since the prior monthly anniversary day;
> (4) is the monthly deduction for the month following the monthly anniversary day.
>
> On any day other than a monthly anniversary day, the policy value will be the policy value on the prior monthly anniversary, plus all net premiums received since that day.
>
> The policy value will be reduced by the amount of any partial surrender.

(Doc. 1-1, p. 15).

7

| 10 | .060 | 30 | .144 | 50 | .559 | 70 | 3.303 | 90 | 18.828 |
|---|---|---|---|---|---|---|---|---|---|
| 11 | .064 | 31 | .148 | 51 | .608 | 71 | 3.621 | 91 | 20.146 |
| 12 | .070 | 32 | .152 | 52 | .663 | 72 | 3.986 | 92 | 21.576 |
| 13 | .082 | 33 | .159 | 53 | .726 | 73 | 4.405 | 93 | 23.201 |
| 14 | .095 | 34 | .166 | 54 | .797 | 74 | 4.872 | 94 | 25.281 |
| 15 | .110 | 35 | .175 | 55 | .873 | 75 | 5.377 | 95 | 28.274 |
| 16 | .125 | 36 | .186 | 56 | .955 | 76 | 5.912 | 96 | 33.107 |
| 17 | .139 | 37 | .200 | 57 | 1.041 | 77 | 6.468 | 97 | 41.685 |
| 18 | .148 | 38 | .215 | 58 | 1.133 | 78 | 7.040 | 98 | 58.013 |
| 19 | .155 | 39 | .232 | 59 | 1.232 | 79 | 7.645 | 99-120 | 90.909 |

(Doc. 1-1, p. 6) (providing the "monthly rate per $1,000 excluding riders") (emphasis omitted).

Other than the scheduled increases provided in the table above, Protective Life has not adjusted its COI rates. (Doc. 92, pp. 9-10, 17, 20-21, ¶¶ 15, 36; Doc. 123, pp. 10-11, 18, 21-22, ¶¶ 15, 36).[6] The plaintiffs allege that "[l]ife insurers, like

---

[6] The plaintiffs have alleged that:

> Protective [Life] has also increased both mortality charges and monthly COI rates on the other policies that Plaintiffs own. For Policy Number B000308093, monthly mortality charges have increased from $2,318.75 on May 2, 2013 to $5,127.62 on May 2, 2018, and monthly COI rates have more than doubled over those periods. For Policy Number B00394328, monthly mortality charges have increased from $1,868.00 in 2012 to $3,487.96 in 2017, and monthly COI rates have increased by 60%. For Policy Number B00300844, monthly mortality charges have increased from $1,523.06 in October 2012 to $4,241.27 in June 2017, and monthly COI rates have increased 150%. For Policy Number B00055419, monthly mortality charges have increased from $124.61 in 2012 to $285.90 in 2019, and monthly COI rates have increased by more than 100%.

(Doc. 92, p. 22, ¶ 38; Doc. 123, p. 23, ¶ 38). Before a hearing in this matter on February 16, 2022, based on these allegations, the Court understood that the plaintiffs were alleging that Protective

Protective [Life], have experienced dramatic improvements in mortality experience and mortality expectations in the past several decades," (Doc. 92, p. 18, ¶ 32; Doc. 123, p. 19, ¶ 32), including during the class period which ranges from August 13, 2012, to August 13, 2018, (Doc. 92, p. 17; Doc. 123, p. 18).[7] The plaintiffs allege that "[d]espite this industry-wide improvement in mortality rates—and corresponding decrease in the cost of providing mortality coverage—Protective [Life] did not determine COI rates a single time during the Class Period to reflect its updated expectations as to future mortality experience, and has never adjusted its COI rates downward to reflect its improving mortality expectations." (Doc. 92, pp. 20-21, ¶ 36; Doc. 123, pp. 21-22, ¶ 36). The plaintiffs contend that, as a result, Protective Life "has violated and continues to violate its contractual commitment to policyholders that its COI charges will be calculated using rates that 'will be determined' based on Protective[] [Life's] 'expectations as to future mortality experience.'" (Doc. 92, pp. 9-10, ¶ 15; Doc. 123, p. 10, ¶ 15). This has led to Protective Life "substantial[ly]" "overcharging policyholders." (Doc. 92, p. 21, ¶ 37; Doc. 123, p. 22, ¶ 37).

---

Life had increased its COI rates above the scheduled increases in the policy. After the hearing, and another reading of the complaint, the Court now understands that the plaintiffs allege that the COI rates increased only as scheduled and that Protective Life is liable for not reducing the rates to account for decreasing mortality rates.

[7] These allegations do not account for increases in mortality rates in the wake of the COVID-19 pandemic.

### III.

Protective Life previously asked the Court to enter judgment in its favor based on the plaintiffs' factual allegations. (Doc. 25). In Protective Life's first motion for judgment on the pleadings, the company argued that the plaintiffs' claims were "time barred, either by Alabama's applicable statute of limitations or its common-law rule of repose." (Doc. 46, p. 1). Writing for the Court, Judge Karon O. Bowdre denied this motion. (Doc. 46, p. 16). Judge Bowdre wrote:

> [The plaintiffs] plausibly allege[] that the policies obligate Protective Life to review and adjust its COI Rate Tables *every month*, and the 2017 CSO Mortality Table and the two subsequent reports plausibly establish that life expectancy rates have improved in the six years prior to the filing of this lawsuit. So, in the face of improving life expectancy rates over the last six years and an alleged obligation to monthly review and update the policies' Rate Tables, the court can reasonably infer that Protective Life breached its duty to downwardly adjust the Rate Tables at some point within the [previous six years].

(Doc. 46, p. 13) (emphasis in Doc. 46).

After Judge Bowdre denied the plaintiff's first motion for judgment on the pleadings, the Eleventh Circuit issued its opinion in *Slam Dunk*. Less than two months later, Protective Life filed its second motion for judgment on the pleadings. (Doc. 111). On August 20, 2021, Judge Bowdre recused, and the case was reassigned to the undersigned judicial officer. (Doc. 126).

## IV.

In *Slam Dunk*, the Eleventh Circuit examined universal life insurance policies.[8] There, as here, the insurer did not reduce its COI rates despite improved expectations of future mortality experience. *Slam Dunk*, 853 Fed. Appx. at 452-53.[9] In *Slam Dunk*, the policy provision regarding COI rates stated:

> The Monthly Cost of Insurance Rates are based on the Insured's Attained Age, the type of benefit, the Class of Insured and whether premiums for that Insured are paid directly to [the insurer] or through payroll deductions. The Monthly Cost of Insurance Rates are determined by [the insurer] based on its expectations as to future mortality experience. Adjustment in the Monthly Cost of Insurance Rates may be made by [the insurer] from time to time, but not more than once a year, and will apply to Insureds of the same class. Under no circumstances will the Monthly Cost of Insurance Rates for Life Insurance ever be greater than those shown in the Table of Guaranteed Maximum Life Insurance Rates. Such guaranteed maximum rates are based on the Commissioners 1980 Extended Term Table (age last birthday) and 4% effective annual interest.

*Slam Dunk*, 853 Fed. Appx. at 452. The Eleventh Circuit found the "may be made" language in this provision permissive and held that under the provision, "as the policyholder's mortality experience improves or declines, [the insurer] may adjust the COI rate accordingly." *Slam Dunk*, 853 Fed. Appx. at 452.

---

[8] The decision in *Slam Dunk* is based on Florida law. *Slam Dunk I, LLC v. Connecticut General Life Ins. Co.*, 853 Fed. Appx. 451, 453-54 (11th Cir. 2021).

[9] In *Slam Dunk*, the insurer increased its COI rates. 853 Fed. Appx. at 452.

11

The Eleventh Circuit held that for the *Slam Dunk* plaintiffs to have a viable cause of action based on excessive COI rates, the insurer's "duty to adjust the COI rate would have to be based exclusively on expectations of future mortality experience, and [the insurer] could not consider any other factors without breaching the [group universal life insurance] policies." *Slam Dunk*, 853 Fed. Appx. at 454. The Eleventh Circuit held that the plaintiffs' proposed interpretation of the rate provision improperly focused on "only one sentence to the exclusion of all others." *Slam Dunk*, 853 Fed. Appx. at 454. Additionally, the plaintiffs "advance[d] a reading of the COI provision that is contrary to its plain language by incorrectly reading exclusivity into the phrase 'based on.'" *Slam Dunk*, 853 Fed. Appx. at 454. The Eleventh Circuit followed *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145 (7th Cir. 2013). *Slam Dunk*, 853 Fed. Appx. at 454-55. There, the Seventh Circuit, relying on a pair of dictionaries, identified five possible definitions for the word "base" – (A) "a main ingredient;" (B) "a supporting or carrying ingredient;" (C) "the fundamental part of something;" (D) "[s]omething on which a thing stands or by which it is supported;" or (E) "[t]he principal ingredient, the fundamental element" – none of which imply exclusivity. *Norem*, 737 F.3d at 1149-50. Relying on *Norem*, the Eleventh Circuit held that the phrase "based on" in the rate provision of the insurance policies at issue in *Slam Dunk* does not connote exclusivity. Therefore,

12

the Eleventh Circuit rejected the plaintiffs' narrow reading of the COI rate provision in *Slam Dunk*.

Applying *Slam Dunk* to the policies in this case, the Court agrees with Protective Life that "based on" does not connote exclusivity and that Protective Life may rely on factors other than expectations of future mortality experience in setting COI rates. As noted above, the policies at issue state:

> The monthly cost of Insurance rate is based on the sex, attained age, and rate class of the Insured and on the policy year. Attained age means age nearest birthday on the prior policy anniversary. Monthly cost of insurance rates will be determined by us, based on our expectations as to future mortality experience.

(Doc. 1-1, p. 16). Accepting the plaintiffs' argument and reading the third sentence to mean that Protective Life may consider only expectations as to future mortality experience when determining monthly COI rates would effectively delete the first sentence.[10] This is contrary to the law in all five states where the subject policies

---

[10] Even if the Court accepts the plaintiffs' argument and finds that "the first sentence refers to the *initial* set of COI rates that applied to the policies at issuance, while the [third] sentence refers to Protective's prospective duty to review and *adjust* COI rates," (Doc. 121, p. 23) (emphasis in Doc. 121), the plaintiffs still may not proceed on the theory that Protective Life may consider only expectations as to future mortality experience when adjusting COI rates. As explained below, under *Slam Dunk*, the phrase "based on" does not preclude Protective Life from considering unenumerated factors. Thus, if the third sentence – "Monthly cost of insurance rates will be on determined by us, based on our expectations as to future mortality." – is the only sentence relevant to prospective changes, Protective Life still may consider factors other than expectations as to future mortality experience. Moreover, the COI rate provision does not require Protective Life to examine and revise COI rates at a particular interval, or at any time, over the life of the policies.

were issued.[11]  Per *Slam Dunk*, "[n]othing about the plain and ordinary meaning of the phrase 'based on' connotes exclusivity, and nothing about it implies the list that follows is exhaustive."  *Slam Dunk*, 853 Fed. Appx. at 455.

Contrary to the plaintiffs' arguments, the Court finds no language in the COI rate provisions in the policies at issue that obligates Protective Life to reassess COI rates monthly.  The sentence "[a]ny change in the monthly cost of insurance rates will be on a uniform basis for insureds of the same class such as age, sex, rate class, and policy year," (Doc. 1-1, p. 16), is instructive.  This sentence obligates Protective Life to proceed in a particular manner when it reassesses COI rates, but the "will be" language does not require Protective Life to reexamine, much less revise, COI rates at certain intervals.

"Any" is the word in the "Any change" provision that speaks to frequency. "The cardinal rule of contractual interpretation is that when the language of a contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with the plain meaning."  *Cleveland v. Crown Financial, LLC*, 183 So.

---

[11] *MVW Management, LLC v. Regalia Beach Developers LLC*, 230 So. 3d 108, 111 (Fla. Dist. Ct. App. 2017); *Maryland Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, 25 (Wis. 2010); *Waffle House, Inc. v. Pavesi*, 806 S.E.2d 204, 208 (Ga. Ct. App. 2017); *Williams v. Nationwide Mut. Ins. Co.*, 152 S.E.2d 102, 106 (N.C. 1967); *Wilbur Smith & Assocs. v. National Bank of South Carolina*, 263 S.E.2d 643, 645 (S.C. 1980) ("In construing a contract, meaning must be attached to all of the verbiage.").

3d 1206, 1209 (Fla. Dist. Ct. App. 2016) (applying Florida contract law).[12] Merriam-Webster defines the adjective "any" as "unmeasured or unlimited in amount, number, or extent." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/any (last visited August 8, 2022) (one of several definitions). An "unmeasured or unlimited" amount may be zero.[13] Accordingly, the phrase "[a]ny change in the monthly [COI] rates" implies that there may not be changes in monthly COI rates at all.

The plaintiffs also point to the language of the COI rate provision that states: "rates will be determined by us, based on our expectations as to future mortality experience," arguing that "will be" is mandatory language that compels Protective Life to adjust its COI rates. (Doc. 121, p. 15). Again, "will be" in this phrase requires Protective Life to consider at least one factor when it determines COI rates,

---

[12] *See also Town Bank v. City Real Estate Development, LLC*, 777 N.W.2d 98, 104 (Wis. Ct. App. 2009) (applying Wisconsin contract law); *NW Parkway, LLC v. Lemser*, 709 S.E.2d 858, 861 (Ga. Ct. App. 2011) (applying Georgia contract law); *RL Regi North Carolina, LLC v. Lighthouse Cove, LLC*, 762 S.E.2d 188, 190 (N.C. 2014) (applying North Carolina contract law); *Schulmeyer v. State Farm Fire and Cas. Co.*, 579 S.E.2d 132, 135 (S.C. 2003) (applying South Carolina contract law).

[13] Under this definition of the adjective "any," Merriam-Webster provides the following example: "any quantity you desire." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/any (last visited August 8, 2022) (emphasis omitted). Merriam-Webster defines the word "quantity" as "an indefinite amount or number." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/quantity (last visited August 8, 2022) (one of several definitions). Zero is a number. Accordingly – returning to the example using the word "any" – the quantity desired may be zero.

The same is true here. "Any change" could refer to an indefinite number of changes, including zero changes.

but "will be" does not compel Protective Life to reexamine COI rates over the life of a policy.

In their effort to distinguish the policies at issue here from the policy at issue in *Slam Dunk*, the plaintiffs point to an endorsement in one of the five policies. The endorsement states:

> In the "Cost of Insurance Rates" section in the Policy to which this endorsement is attached, we state that monthly cost of insurance rates will be determined by us, based on our expectations as to future mortality experience.
>
> In setting these rates, we also take into account the portion of sales and underwriting expenses that are in excess of the expense charge that applies to the first twelve policy months. These expenses are included in the cost of insurance rates for no more than the first ten policy years.
>
> Any change in our scale of cost of insurance rates will be based solely on our expectations as to future mortality experience.

(Doc. 33-2, p. 26; *see also* Doc. 121, p. 24). The plaintiffs focus on the word "solely" in the third paragraph, arguing that "solely" indicates that Protective Life intended the phrase "based on" to connote exclusivity. But that cannot be so because the endorsement expressly states that COI rates are not based only on future mortality experience; those rates also account for certain expenses. (Doc. 33-2, p. 26). The endorsement distinguishes between COI rates and scale of COI rates and provides that only the latter "will be based solely on our expectations as to future mortality experience." In any event, the plaintiffs' argument runs headlong again

into the "any" adjective that indicates that Protective Life may opt never to change its scale of COI rates.

In short, the differences between the language of the COI rate provision in *Slam Dunk* and the language in the provisions at issue here do not produce a different result. Consistent with *Slam Dunk*, on the record before the Court, Protective Life has no contractual duty to lower COI rates when expectations as to future mortality experience improve. The Court recognizes that the Eleventh Circuit's opinion in *Slam Dunk* is unpublished. Under Eleventh Circuit rules, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. Still, in the absence of contrary authority in the Eleventh Circuit, the Court elects to follow *Slam Dunk*.

In doing so, the Court acknowledges that were it published, *Slam Dunk* would appear to create the beginnings of a circuit split. In *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020), the United States Court of Appeals for the Eighth Circuit stated:

> The focus of the dispute between the parties is whether the phrase "based on," as used in the COI provision stating that the "rates for each policy year are based on the insured's age on the policy anniversary, sex, and applicable rate class," allowed [the insurer] to include other non-mortality factors in the calculation of the COI rates. [The insurer] argues that this provision allows it to include other factors, while [the insured] asserts that it unambiguously does not. We conclude that, at the very least, the phrase is ambiguous, and must be construed in favor of [the insured].

17

. . .

> Looking at the language of the provision alone, we conclude that the phrase "based on" is at least ambiguous because a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated "based on" listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation.

*Vogt*, 693 F.3d at 763-64.  Relatedly, in *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456 (S.D.N.Y. 2014), the United States District Court for the Southern District of New York criticized *Norem*, stating:

> It seems to me that the Seventh Circuit [in *Norem*] has unnecessarily complicated a simple issue.  Though there are literally dozens of dictionary definitions of "base" for use in different literal and figurative contexts, the phrase "based on" is commonly understood to mean that something is created in reliance on identified factors.
>
> Moreover, the *Norem* analogy to a cake recipe is inaccurate.  A recipe is a list of ingredients that are combined to create something.  In cookbooks I read, recipes are exhaustive lists of all the ingredients needed to bake a case, or fricassee a chicken, or roast a saddle of mutton.  *See, e.g.*, Irma S. Rombauer & Marion Rombauer Becker, Joy of Cooking (Bobbs-Merrill Co. 1975) (1931).  Highly experienced chefs might be able to play with recipes, but the average home cook (the person analogous to the average insured under New York law) follows them slavishly, without adding other, undisclosed ingredients.  The cakes they bake are "based on" the ingredients listed in the recipe—they include those ingredients and none other.

*Fleisher*, 18 F. Supp. 3d at 472-73.[14]

---

[14] In *Norem*, the United States Court of Appeals for the Seventh Circuit stated:  "[N]o one would suppose that a cake recipe 'based on' flour, sugar, and eggs must be limited only to those ingredients."  *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1150 (7th Cir. 2013).

The Court does not opine on the merits of the arguments in *Vogt* and *Fleisher*. Instead, the Court acknowledges that *Slam Dunk* may have detractors and that another Eleventh Circuit panel might reach a different conclusion. The law of the Eleventh Circuit is not settled without a binding decision from the Circuit or from the United States Supreme Court.

## CONCLUSION

For the reasons stated above, the Court grants Protective Life's motion for judgment on the pleadings. By separate order, the Court will enter judgment for Protective Life.

**DONE** and **ORDERED** this August 8, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE